UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WINSTON SMITH, ET AL.,

       Plaintiffs,

v.                              Case No. 8:24-cv-2815-VMC-AAS

QUALITY CARRIERS, INC.,

       Defendant.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant Quality Carriers, Inc.'s Motion to Dismiss and Strike Plaintiffs' Class and Collective Action Allegations (Doc. # 32), filed on March 10, 2025. Plaintiffs Winston Smith, Duane Nelson, Jerome Jones, and Fred Dean responded on March 31, 2025. (Doc. # 37). Quality Carriers replied on April 10, 2025. (Doc. # 49). Plaintiffs sur-replied on April 30, 2025. (Doc. # 56). For the reasons that follow, the Motion is granted in part and denied in part.

## I.  Background

Plaintiffs Winston Smith, Duane Nelson, Jerome Jones, and Fred Dean were full-time delivery drivers for Defendant Quality Carriers, Inc. out of a Quality Carriers terminal in Rahway, New Jersey. (Doc. # 24 at 4). Quality Carriers is a

Florida-based delivery company specializing in the transport of chemical materials and hazardous products. (Id. at 1).

Plaintiffs each signed independent contractor agreements with Quality Carriers. (Doc. ## 32-1; 32-2; 32-3; 32-4; 32-5; 32-6). Plaintiffs allege that they and other drivers "exercise virtually no independent control over their own work life and therefore they are employees of Quality Carriers under New Jersey and federal law." (Doc. # 24 at 5). Furthermore, Plaintiffs assert that "Quality Carriers requires that Plaintiffs and other drivers buy or lease their own vehicles and further requires that they pay for their own fuel and maintenance." (Id. at 6).

Each independent contractor agreement contained a Florida and federal choice-of-law provision. (Doc. ## 32-1 at 23; 32-2 at 24-25; 32-3 at 23-24; 32-4 at 24-25; 32-5 at 23-24; 32-6 at 23-24). There were also multiple waivers in each agreement. (Doc. ## 32-1 at 24; 32-2 at 26; 32-3 at 25; 32-4 at 26; 32-5 at 25; 32-6 at 25). Relevant to this Motion, each agreement contained the following waiver:

> Contractor and contractor's workers waive any right to initiate, joint (i.e., opt in to), remain in (i.e., not opt out of), or otherwise participate in any class action, collective action, consolidated action, or representative action brought against carrier, including but not limited to such actions

brought under state or federal law and those arising under the Fair Labor Standards Act. (Id.).

Plaintiffs allege that despite "routinely work[ing] 12 hours a day, and up to 60 hours a week making deliveries for Quality Carriers, Plaintiffs d[id] not receive any additional compensation for hours worked in excess of 40 a week." (Id.). They also claim that they "were required to attend a two-week training facilitated by Quality Carriers. They received a set rate of $500.00 for one week of the [t]raining, and received no pay for the second week, despite attending training for up to 40 hours." (Id. at 7).

Plaintiffs initiated this action against Quality Carriers on December 6, 2024. (Doc. # 1). Plaintiffs filed an amended complaint on February 25, 2025, which is the operative complaint. (Doc. # 24). The operative complaint alleges three counts: a violation of the New Jersey Wage Payment Law ("NJWPL") (Count One); a violation of the New Jersey Wage and Hour Law ("NJWHL") (Count Two); and a violation of the Fair Labor Standards Act ("FLSA") (Count Three). (Id.). Plaintiffs bring Counts One and Two on a class basis. (Id. at 7). Plaintiffs bring Count Three on a collective basis. (Id. at 8).

Quality Carriers moves to dismiss Count One, strike the class and collective allegations, and strike the request to recover punitive damages. (Doc. # 32). Plaintiffs responded (Doc. # 37), Quality Carriers replied (Doc. # 49), and Plaintiffs sur-replied. (Doc. # 56). The Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

## III. Analysis

Quality Carriers moves to dismiss Count One, strike the class and collective action allegations, and strike the request for punitive damages. (Doc. # 32 at 1). The Court analyzes each of Quality Carriers' arguments in turn.

### A. Motion to Dismiss Count One

Quality Carriers argues that Count One should be dismissed for failure to state a claim. (Doc. # 32 at 13-15). The Court disagrees.

The NJWPL mandates that "[n]o employer may withhold or divert any portion of an employee's wages." N.J. Stat. § 34:11-4.4. "Wages" is defined as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." Id. at § 34:11-4.1(c). "Employee" is defined as "any person suffered or

permitted to work by an employer, except that independent contractors and subcontractors shall not be considered employees." Id. at § 34:11-4.1(b). Thus, a plain reading of the statute dictates that "wages" only flow to "employees," but "employees" do not include "independent contractors." Id. at § 34:11-4.1(b-c).

However, all parties implicitly agree that New Jersey law applies, and New Jersey courts do not apply such a narrow interpretation. "[T]he NJWPL does not require an entity to render payment directly to a person to qualify as an employer." Carrow v. FedEx Ground Package Sys., Inc., No. 1:16-cv-3026-RBK-SAK, 2019 WL 7184548, at *5 (D.N.J. Dec. 26, 2019) (internal quotations and citations omitted). "Rather, courts 'are obliged to look behind contractual language to the actual situation - the status in which parties are placed by [the] relationship that exists between them.'" Id. at *6 (quoting Feinsot v. Bd. of Review, No. A-1982-04T2, 2007 WL 561326, at *4 (N.J. Super. Ct. App. Div. Feb. 26, 2007)). Therefore, the Court concludes that the mere existence of the independent contractor agreements is insufficient to establish that Plaintiffs' NJWPL claims should be dismissed. See Maranzano v. S-L Distribution Co., LLC, No. 1:19-cv-1997-JPW, 2020 WL 7974332, at *4 (M.D. Pa. Dec. 18, 2020) ("[W]e

6

note that, [for the purposes of a motion to dismiss in a NJPWL case], neither the Distributor Agreement's classification of Plaintiff as an independent contractor, nor the fact that Defendant classifies the payments as coming from Plaintiff's 'customers' is dispositive of the 'wages' question.").

Rather, the Court must analyze whether Plaintiffs have pled sufficient facts to establish, if true, that their "actual relationship" was akin to an employer-employee relationship. <u>Carrow</u>, 2017 WL 1217119, at *6; <u>see also</u> <u>Maranzano</u>, 2020 WL 7974332, at *5 (denying a motion to dismiss a NJWPL claim solely based on an independent contractor agreement, finding that "[d]iscovery may well allow Plaintiff to prove that the true nature of his relationship with Defendant is that of an employee to an employer"). "The inquiry must examine not only the terms of the contract of agreement to provide services but also the facts of the employment. In other words, the inquiry extends to all the circumstances attendant to the actual performance of the work." <u>Hargrove v. Sleepy's, LLC</u>, 106 A.3d 449, 464 (N.J. 2015).

Plaintiffs allege that they "exercise virtually no independent control over their own work life," and "work full-time for Quality Carriers, are required to display the Quality

Carriers logo on their vehicles, and operate under Quality
Carriers' Motor Carrier authority, meaning that they are
unable to make deliveries for companies other than Quality
Carriers." (Doc. # 24 at 5). Further, they claim that they
"are not involved in the negotiation and/or arrangements
between Quality Carriers and its customers over pick up,
delivery times, and other requirements," "are not able to
deliver for other companies while working for Quality
Carriers," and "do not own a route and their income is totally
dependent upon their delivery schedule that is completely
controlled by Quality Carriers." (Id. at 5-6).

     Accordingly, Plaintiffs have pled sufficient facts that,
if true, would show that their actual relationship was
functionally an employer-employee relationship. See
Maranzano, 2020 WL 7974332, at *3 n.2 ("Plaintiff's
allegations that he works exclusively for Defendant and does
not engage in independent trade, when coupled with the
allegation that he is an employee, are sufficient to survive
a motion to dismiss . . . . Such a fact-heavy inquiry may
well reveal that Plaintiff and the putative class are indeed
independent contractors, not employees. But Plaintiff has
sufficiently alleged his employment status at this juncture
to survive a Rule 12(b)(6) motion."); Carrow, 2017 WL

1217119, at *6 (denying a motion to dismiss a NJWPL claim because "this Court must analyze beyond the contract formed between Defendant and the corporate entities formed by Plaintiffs in order to determine whether Plaintiffs were employees"). The Motion is denied in so far as it seeks the dismissal of Count One.

### B. Motion to strike Class and Collective Action Allegations

Quality Carriers asks the Court to enforce the parties' class and collective action waivers and strike Plaintiffs' class and collective action allegations. (Doc. # 32 at 7-13). The Court agrees the waivers should be enforced.

### i. Choice-of-law provision

The parties disagree about which forum's law should dictate the enforceability of the class and collective action waivers. However, the independent contractor agreements contain Florida and federal choice-of-law of provisions, which no party disputes are enforceable. (Doc. ## 32-1 at 23; 32-2 at 24-25; 32-3 at 23-24; 32-4 at 24-25; 32-5 at 23-24; 32-6 at 23-24). Thus, the Court will apply Florida law and federal law. See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 311 (Fla. 2000) ("Florida enforces choice-of-law provisions unless the law of the chosen forum

contravenes strong public policy."); Lindo v. NCL (Bahamas), Ltd., 652 F.3d 1257, 1275 (11th Cir. 2011) (holding that under federal law, "there is a strong presumption in favor of freely-negotiated contractual choice-of-law . . . provisions").

"Under both federal and Florida law . . . , the enforceability of a class action waiver should be resolved by way of a motion to dismiss and before discovery begins." Roman v. Spirit Airlines, Inc., 482 F. Supp. 3d 1304, 1315 (S.D. Fla. 2020) (internal quotations and citations omitted), aff'd, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021).

The class allegations are within Counts One and Two, which are state law claims over which the Court may exercise supplemental jurisdiction. (Doc. # 34 at 7). The collective allegations are only within Count Three, which is the FLSA claim. (Id. at 8).

## ii. **Count Three**

Federal law dictates that the collective action waiver should be enforced. The Eleventh Circuit has found "that the text of FLSA § 16(b) does not set forth a non-waivable substantive right to a collective action." Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1335 (11th Cir. 2014).

"While it may be the preference of some that class action waivers should be forbidden in suits arising under the FLSA, it is not the place of a federal court to insert that preference into a statute when there is no basis to do so." Figueredo-Chavez v. RCI Hosp. Holdings, Inc., 574 F. Supp. 3d 1175, 1182 (S.D. Fla. 2021). Therefore, the Court finds no justification to decline enforcement of the collective action waiver. The Court strikes the collective allegations within Count Three and grants the Motion in part accordingly.

### iii. **Counts One and Two**

Plaintiffs argue that the class action waivers are unenforceable both as a matter of public policy and because they are unconscionable. (Doc. # 37 at 4-17). The Court will analyze these arguments in turn.

### a. **Public Policy**

"Under Florida law, a contractual provision that defeats the purpose of a remedial statute violates public policy and is thus unenforceable." McKenzie Check Advance of Fla., LLC v. Betts, 112 So. 3d 1176, 1183 (Fla. 2013); see also Lacey v. Healthcare & Ret. Corp. of Am., 918 So. 2d 333, 334 (Fla. 4th DCA 2005) ("To the extent that a contractual limitation defeats the purpose of a remedial statute, the limitation may be found void as a matter of law."). However,

11

to defeat the purpose of a remedial statute, the contractual provision must "substantially diminish[] or circumvent[] the[] remedies" provided by the statute. Shotts v. OP Winter Haven, Inc., 86 So. 3d 456, 459 (Fla. 2011).

The waiver does not fall into either of the two categories in which courts find contractual provisions unenforceable as a matter of public policy. The first category relates to statutes for which plaintiffs "would not be able to obtain competent representation absent the class action mechanism. This was because the issues were complex and time-consuming — and there was a substantial risk that a circuit court would award inadequate compensation at the end of a successful case." McKenzie v. Betts, 55 So. 3d 615 (Fla. 4th DCA 2011), decision quashed sub nom. on other grounds McKenzie Check Advance of Fla., 112 So. 3d at 1176.

However, Plaintiffs bring their claims under statutes that allow for the recovery of attorneys' fees. See N.J. Stat. § 34:11-4.10(c); N.J. Stat. § 34:11-56a25. This ability assures that Plaintiffs can obtain representation to vindicate their rights, such that the waiver is not unenforceable. See Jenkins v. First Am. Cash Advance of Georgia, LLC, 400 F.3d 868, 878 (11th Cir. 2005) ("[T]he district court's contention that consumers would likely be

12

unable to obtain legal representation without the class action vehicle is unfounded. The Arbitration Agreements expressly permit Jenkins and other consumers to recover attorneys' fees and expenses if allowed by statute or applicable law." (internal quotations omitted)). As Plaintiffs can seek attorneys' fees, the class action waivers do not inhibit Plaintiffs' ability to obtain relief under the statutes.

The second category relates to contractual provisions which "directly undermine specific statutory remedies created by the Legislature." Shotts, 86 So. 3d at 474. In Shotts, the Court found unenforceable a contractual provision which effectively prohibited nursing home residents from obtaining punitive damages even though the Nursing Home Resident's Act specifically allowed for punitive damages. Id. at 471-74; see also Gessa v. Manor Care of Fla., Inc., 86 So. 3d 484, 492-93 (Fla. 2011) (reaching same holding as Shotts). In contrast, Plaintiffs have not pointed to any specific statutory remedy that is "undermine[d]" by the class waiver. Shotts, 86 So. 3d at 474. Plaintiffs may find it convenient to proceed as a class, but the class waiver does not serve to limit their ability to recover damages under the NJWHL and NJWPL. Thus,

the class action waivers are not unenforceable as a matter of public policy.

The Court is unpersuaded by Plaintiffs' argument that these cases regarding the enforceability of class waivers are "cherrypicked" from cases involving arbitration clauses. (Doc. # 37 at 14). Multiple courts have found that, for the purposes of analyzing whether class waivers should be enforced, it is irrelevant whether the waivers were considered within the context of an arbitration agreement. See Figueredo-Chavez, 574 F. Supp. 3d at 1180 ("[T]he FLSA does not prohibit enforcement of the collective-action waivers even where an arbitration agreement is unenforceable." (internal quotations omitted)); Singh v. Uber Techs. Inc., 235 F. Supp. 3d 656, 673 n. 11 (D.N.J. 2017) ("Plaintiff's contention that the NJWHL provides an unwaivable substantive right to bring a class action is baseless. To date, no state or federal court has endorsed such a position, and tellingly, Plaintiff has not cited to any authority for support."), vacated and remanded on other grounds, 939 F.3d 210 (3d Cir. 2019). The Court joins these other courts in finding that it is immaterial that these class waivers were not coupled with arbitration clauses.

### b. **Unconscionability**

14

The Court is also unpersuaded by Plaintiffs' argument that the waivers should be voided as "unconscionable." (Doc. # 37 at 11-14); see also Blankfeld v. Richmond Health Care, Inc., 902 So. 2d 296, 299 (Fla. 4th DCA 2005) ("[H]olding a contractual provision unenforceable because it defeats the remedial provisions of a statute, and is thus contrary to public policy, is distinct from finding unconscionability."). "To support a determination of unconscionability, [] the court must find that the contract is both procedurally unconscionable and substantively unconscionable." Powertel, Inc. v. Bexley, 743 So. 2d 570, 574 (Fla. 1st DCA 1999). Plaintiffs argue that the class waivers are both substantively and procedurally unconscionable. (Doc. # 37 at 11-14).

The Court disagrees. The waivers are not substantively unconscionable. "[S]ubstantive unconscionability focuses on the agreement itself and looks to whether the terms of the contract are unreasonable and unfair." Bellsouth Mobility LLC v. Christopher, 819 So. 2d 171, 173 (Fla. 4th DCA 2002). The class action waivers are inapposite to the cases in which contract provisions were found unconscionable because they prohibited plaintiffs from recovering the full scope of damages to which they were entitled under the law. See Id.

15

("The contract on its face supports that the arbitration clause is, at a minimum, substantively unconscionable because it requires customers to give up many specific legal remedies. For instance, it expressly limits Bellsouth's liability to actual damages."); <u>Powertel</u>, 743 So. 2d at 576 ("One indicator of substantive unconscionability is that the agreement requires the customers to give up other legal remedies. That is so in the present case. The arbitration clause expressly limits Powertel's liability to actual damages, thereby precluding the possibility that Powertel will ever be exposed to punitive damages, no matter how outrageous its conduct might be." (internal quotations and citations omitted)). As already explained, the class waivers do not limit the actual damages obtainable by Plaintiffs. Thus, the class action waivers are not substantively unconscionable.

Furthermore, the Court finds <u>Powertel</u>'s holding that the class waiver in that case was unconscionable to be inapplicable here. 743 So. 2d at 576. That holding was based on the logic that "[c]lass litigation provides the most economically feasible remedy for the kind of claim that has been asserted here." <u>Id.</u> However, the Court already addressed how a class action is unnecessary for Plaintiffs to obtain a

16

full recovery. Thus, the Court finds no basis to hold that these waivers are substantively unconscionable.

As the Court finds that the waivers are not substantively unconscionable, the Court does not need to analyze whether the waivers are procedurally unconscionable. See Id. at 574 ("To support a determination of unconscionability, [] the court must find that the contract is both procedurally unconscionable and substantively unconscionable.").

### iii. **Conclusion**

The Court finds that the class action waivers should not be voided as either violative of public policy or as unconscionable. Therefore, the waivers should be given their full effect, and Plaintiffs should be barred from bringing their claims as a class. The Court strikes Plaintiffs' class allegations and grants Quality Carriers' Motion in so far as it seeks the striking of these allegations.

### C. **Motion to Strike Request for Punitive Damages**

Quality Carriers argues that Plaintiffs' request for punitive damages should be stricken. (Doc. # 32 at 15). While Plaintiffs acknowledge Quality Carriers' argument, they do not challenge it. (Doc. # 37 at 2 n. 1). The Court agrees with Quality Carriers that punitive damages are unavailable under the NJWPL, NJWHL, and FLSA. See Kronick v. bebe Stores,

17

Inc., No. 1:07-cv-4514-RBK-AMD, 2008 WL 4509610, at *3
(D.N.J. Sept. 29, 2008) ("[T]he NJWPL does not provide for
statutory or punitive damages to prevailing civil litigants."
(internal quotations and citations omitted)); Ferreras v. Am.
Airlines, Inc., No. 2:16-cv-2427-CCC-JSA, 2017 WL 1156737, at
*4 (D.N.J. Mar. 28, 2017) ("[T]he NJWHL does not provide for
liquidated    damages,    injunctive    relief,    or    punitive
damages."); Snapp v. Unlimited Concepts, Inc., 208 F.3d 928,
934 (11th Cir. 2000) (holding that for the FLSA, "punitive
damages would be out of place in a statutory provision aimed
at making the plaintiff whole"). Therefore, the Court strikes
Plaintiffs' request for punitive damages and grants the
Motion on this issue.

　　　Accordingly, it is hereby

　　　**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Quality Carriers, Inc.'s Motion to Dismiss and
　　　Strike   Plaintiffs'   Class   and   Collective   Action
　　　Allegations (Doc. # 32) is **GRANTED** in part and **DENIED** in
　　　part.

(2)  Plaintiffs Winston Smith, Duane Nelson, Jerome Jones,
　　　and Fred Dean's class and collective action allegations
　　　are stricken.

(3)  Plaintiffs' request for punitive damages is stricken.

18

(4)  Defendant is directed to file an answer within 14 days
of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>7th</u>
day of May, 2025.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

19